### Ex Parte Ed. H. Lysaght.

No. 8631.    Decided April 2, 1924.

**1.—Net Container Law—Constitutional Law—Interstate Shipments.**

Where the Net Container Act, chapter 53, Acts 1, 2, and 3, Called Session, Thirty-Eighth Legislature was attacked because the articles shipped were an interstate shipment and not subject to the law in question, this feature of appellant's contention will not be discussed as the matter will be disposed of upon other grounds.

**2.—Same—Companion Case—Practice on Appeal.**

Where there is pending in this court, and this day decided cause number 8578, Overt v. State, in which the validity of this same law is attacked, and wherein it has been held in that case to be unconstitutional and unenforceable, and the relator makes the same attack upon the law as in said case, and the facts are similar, it is ordered that the relator be discharged.

**3.—Same—Rule Stated—Per Cent of Moisture.**

It is as impracticable for dealers in the commodities discussed in the Overt and this case to comply with the law as it is written, as it would be to comply therewith if it had in so many words required them to maintain in the products when offered for sale at all times the same percent of moisture content regardless of atmospheric conditions, and is therefore unenforceable.

From Tarrant County.

Original Habeas Corpus Proceedings asking release from arrest under the Net Container Act.

The opinion states the case.

*Phillips, Brown & Morris,* for relator.—Dorsey v. State, 38 Texas Crim. Rep., 527; J. Borns Baking Company v. Samuel McKeever, 189 N. W., 383; Ex Parte Humphreys, 244 S. W., 822.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State.

HAWKINS, Judge.—Relator is prosecuted for a violation of what is known as the "Net Container Act," Chaper 53, Acts 1st, 2d and 3d Called Sessions, 38th Leg., page 121. The law is attacked as being

unconstitutional and incapable of enforcement in an original habeas corpus proceeding in this court. The facts follow: Relator is president of the Carter Grocer Company, a corporation, located at Fort Worth in Tarrant County, Texas, said company being engaged in the wholesale grocery business. Relator has no active interest in the affairs of the concern and no direct management thereof; he had no knowledge of the transaction of the Carter Grocer Company out of which this prosecution grew. The company in question brought from the Idaho Bean & Elevator Company, located at Troy, Idaho, four hundred bales of beans, the bales being made up of two pound, four ounce sacks or packages, and three hundred bales made up of four pound, eight ounce sacks or packages. Before these beans were received at Fort Worth by the Carter Grocer Company they had received an order for four bales from the Hamilton Grocer Company of Mineral Wells, Texas. When the shipment reached Forth Worth the Carter Grocer Company shipped to the Hamilton Grocer Company at Mineral Wells four bales of the beans in the original bales. One of these bales contained twenty small sacks or packages marked upon each package "four pounds and eight ounces net when packed." The other three bales contained the smaller packages of beans, each package being marked "two pounds and four ounces net when packed." While these beans were exposed for sale by the Hamilton Grocer Company at Mineral Wells an employe of the Weights and Measures Department of the State of Texas weighed twelve of the large packages, one of which weighed four pounds, six and one-half ounces; eight, four pounds, seven ounces; one, four pounds, seven and one-half ounces; and two weighed four pounds and eight ounces. Of the smaller sacks or packages twenty weighed two pounds and three ounces; thirteen weighed two pounds, three and one-half ounces; and the remainder weighed two pounds and four ounces. Sixty-six cases were filed against relator in the justice court at Mineral Wells in each of which, as president of the Carter Grocer Company, he was charged with a violation of the law in question, based on the foregoing facts. When the Carter Grocer Company received the beans at Fort Worth the bales were not broken or weighed, they relying upon the guaranty of the Idaho Bean and Elevator Company from whom they purchased for the correctness of the weights marked upon each package.

The law is attacked upon various grounds, one being that the facts clearly show that the beans in question were an interstate shipment and not subject to the Act in question. We do not discuss this feature of appellant's contention, as the matter will be disposed of upon other grounds.

There is pending before us at this time, and this day decided, cause Number 8578, Overt v. State, in which the validity of this same law

is attacked. It is held in the opinion in that case to be unconstitutional and unenforceable. The relator makes the same attack upon the law as is made in Overt's case (supra) and the facts are similar as showing that the moisture content in beans cured and placed upon the market as were the ones here under consideration varies the same as does the moisture content in flour which was the direct point at issue in Overt's case. A chemist testified in the present case as follows:

"   . . . I know that beans in general, when dried and packed ready for the market, contain normally about 10 to 20 per cent moisture. I know also that the amount of moisture which beans contain, depends upon two things; First, upon the extent to which they have been dried or cured from the green stage, after having matured; and second, the atmospheric conditions to which said beans have been subjected. The amount of moisture in beans dried and packed for shipping and market varies, and when the amount of moisture contained in said beans varies, the weight of a given quantity of said beans will vary correspondingly. It is not practical to so pack beans for shipment and for the market in the way in which they are ordinarily handled by commercial concerns so that they are not subject to atmospheric conditions, the amount of moisture which they contain, varying from time to time according to such atmospheric conditions, and resulting in corresponding variations in weight, although such variations may be only slight at times. I have subjected the beans designated as Serv-us beans, put in paper sacks, same being a small white bean, and being the same character of beans that were sold by the Carter Grocer Company to the Hamilton Grocery Company, of Mineral Wells, and I find that the beans in the package which I obtained from the Carter Grocer Company on the 11th day of March, 1924, at Fort Worth, Texas, contain 13.25½ moisture. I find by experiment that by subjecting said beans to change of moisture and atmospheric conditions that the per cent of moisture contained in said beans can be increased or decreased, according to the amount of moisture in the air in which the beans are placed. The variations in per cent of moisture may be increased to 19.70 and decreased to 5.88%, and results in a corresponding variation in the weight of a given quantity of beans. These experiments on decreasing the moisture content were made while the beans were in the paper sack or container in which they were at the time I secured them from the Carter Grocer Company. One per cent equals approximately one-third of an ounce on the 2-lb packages used."

From the foregoing statement in connection with the other facts heretofore given it will be seen that everything said by us in Overt's case applies equally to the facts of the present one and we think it unnecessary to write further relative to the matter. It is as impracticable for dealers in the commodities discussed in the two cases

to comply with the law as it is written as it would be to comply therewith if it had in so many words required them to maintain in the products when offered for sale at all times the same per cent of moisture content regardless of atmospheric conditions. The variance in the per cent of moisture is not an act of the wholesaler or dealer. It arises from a cause over which they have no control and a variance in weight brought about thereby can not be attributed to them, nor a criminal prosecution based thereon.

For the same reasons stated in the opinion in Overt's case (supra) relator is ordered discharged.

*Relator discharged.*